**Kevin WARE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 69A05–0311–CR–590.**

Court of Appeals of Indiana.

Nov. 3, 2004.

---

George Hoffman, III, Michael R. Auger, Jones Hoffman & Admire, Franklin, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Kevin Ware (Ware), appeals his convictions for sexual

misconduct with a minor as a Class B felony, Ind.Code § 35–42–4–9(a)(1); and sexual misconduct with a minor as a Class C felony, I.C. § 35–42–4–9(b)(1).

We affirm in part, reverse in part, and remand.

### ISSUES

Ware raises three issues on appeal, which we restate as follows:

(1) Whether the State presented sufficient evidence to support Ware's convictions for the two counts of sexual misconduct with a minor alleged to have occurred on or about February 2001 to April 15, 2001;

(2) Whether Ware is entitled to a new trial on the ground that he was substantially prejudiced by the admission of evidence of acts that occurred outside of Ripley County, Indiana; and

(3) Whether the trial court abused its discretion in sentencing Ware.

### FACTS AND PROCEDURAL HISTORY

S.H. was born in April 1985. In the fall of 1999, when S.H. was fourteen years old, he befriended Ware's adolescent son and, subsequently, began spending time at Ware's house. By the winter of 2000–2001, S.H. was spending the night at the Ware house at least every other weekend. S.H. also accompanied Ware and Ware's son on several vacations during this period. Specifically, Ware took his son and S.H. to Canada during Spring Break of 2000, to West Virginia in February 2001, and on a Caribbean Cruise during Spring Break of 2001.

In September of 2000, Ware acquired a hot tub. Within one month of acquiring the hot tub and after S.H. had been in the hot tub a couple of times with Ware, Ware told S.H. that he did not need to wear swim trunks in the hot tub. After S.H. complied, Ware began to touch S.H.'s genitals with his foot while they were in the hot tub. Soon thereafter, Ware also began fondling S.H. with his hands, and S.H. began to touch Ware—these incidents occurred in the hot tub approximately two or three times a month. Moreover, every time S.H. was in the hot tub, he drank alcohol supplied by Ware. During a visit to Ware's house, a friend of S.H., J.M., observed Ware and S.H. sitting naked in the hot tub together and told S.H. that he found it "weird." (Transcript p. 195). Another friend of S.H., K.G., observed S.H. drinking alcohol while sitting in the hot tub and also noticed that S.H. and Ware did not wear swim trunks in the hot tub. While Ware and S.H. were in the hot tub, Ware's son was generally inside the house playing video games.

At some point before the end of 2000, Ware lifted S.H. above the water of the hot tub and performed oral sex on him. Ware and S.H. then began going regularly to Ware's bedroom to watch pornographic movies while lying in bed. At the end of one of several parties Ware hosted in early 2001, S.H.'s older brother observed Ware and S.H. engaging in sexual conduct in Ware's bedroom, and he confronted S.H. the next day. Following this confrontation, S.H. and Ware continued their sexual relationship "the same as before." (Tr. p. 288). Within the time period of December 2000 to April 2001, Ware fondled S.H. between ten and twenty times and there were five episodes of oral sex. The sexual activity did not "slow down" until the summer of 2001. (Tr. p. 293).

In August of 2002, Child Protective Services called the Batesville City Police Department to report Ware's sexual misconduct, which S.H. had disclosed in a counseling session. Shortly thereafter, Officer David Abel of the Batesville City

Police Department formulated a plan involving S.H.'s father, who had befriended Ware when their sons began spending time together, and several officers from the Batesville City Police Department and the Indiana State Police Department. Specifically, the Batesville City Police Department outfitted S.H.'s father with an electronic listening device and sent him to confront Ware. Immediately following the confrontation, during which Ware admitted to S.H.'s father that he and S.H. had touched each other and had engaged in oral sex, several officers from both police departments served search and arrest warrants.

On September 6, 2002, the State filed an information, charging Ware with Count I, sexual misconduct with a minor as a Class B felony, I.C. § 35–42–4–9(a)(1); Count II, sexual misconduct with a minor as a Class C felony, I.C. § 35–42–4–9(b)(1); and Count III, dissemination of matter harmful to minors, a Class D felony, I.C. § 35–49–3–3.

On March 27, 2003, the State deposed S.H. On April 7, 2003, the State moved to file Count IV, sexual misconduct with a minor as a Class B felony, I.C. § 35–42–4–9(a)(1); and Count V, sexual misconduct with a minor as a Class C felony, I.C. § 35–42–4–9(b)(1).

A jury trial commenced on September 2, 2003. Following the trial, on September 4, 2003, the jury found Ware guilt of all counts.

On October 20, 2003, the trial court held a sentencing hearing. Following the sentencing hearing, the trial court sentenced Ware to ten years on Count I, sexual misconduct with a minor as a Class B felony; four years on Count II, sexual misconduct with a minor as a Class C felony; one and one-half years on Count III, dissemination of matter harmful to minors, a Class D felony; ten years on Count IV, sexual misconduct with a minor as a Class B felony; and four years on Count V, sexual misconduct with a minor as a Class C felony.

The trial court ordered that the sentences for Counts I, II, and III were to be served concurrently; that the sentences for Counts IV and V were to be served concurrently; and that the concurrent sentences for Counts I–III were to be served consecutive to the concurrent sentences imposed for Counts IV and V. Finally, the trial court ordered that five years of the total 20 year sentence be suspended, with Ware on probation, and ordered Ware to pay for any counseling S.H. receives as a result of these crimes.

Ware now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

First, Ware contends that the State presented insufficient evidence to support his convictions for Counts IV and V, sexual misconduct with a minor as a Class B felony and as a Class C felony. I.C. § 35–42–4–9(a)(1), (b)(1). When reviewing sufficiency of the evidence claims, this Court does not reweigh the evidence or assess the credibility of witnesses. *Causey v. State*, 808 N.E.2d 139, 143 (Ind. Ct.App.2004). Instead, we consider only the evidence most favorable to the verdict, together with all reasonable and logical inferences to be drawn therefrom. *Id.* The conviction will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Id.* A molested child's uncorroborated testimony is sufficient to sustain a conviction. *Sipe v. State*, 797 N.E.2d 336, 339 (Ind.Ct. App.2003).

Sexual misconduct with a minor is defined by Indiana Code § 35–42–4–9, which provides in pertinent part:

> (a) A person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to . . . deviate sexual conduct commits sexual misconduct with a minor, a Class C felony. However, the offense is:
>
> > (1) a Class B felony if it is committed by a person at least twenty-one (21) years of age[.]
>
> . . .
>
> (b) A person at least (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits sexual misconduct with a minor, a Class D felony. However, the offense is:
>
> > (1) a Class C felony if it is committed by a person at least twenty-one (21) years of age[.]
>
> . . .
>
> (c) It is a defense that the accused person reasonably believed that the child was at least sixteen (16) years of age at the time of the conduct. . . .

Thus, in order to convict Ware of sexual misconduct with a minor as a Class B felony and as a Class C felony, the State was required to prove beyond a reasonable doubt that Ware performed or submitted to deviate sexual conduct and fondling or touching with a child between the ages of fourteen and sixteen. "Deviate sexual conduct" means an act involving a sex organ of one person and the mouth or anus of another person. I.C. § 35–41–1–9(1).

■ Ware contends specifically that the evidence is insufficient to support two of his convictions for sexual misconduct with a minor because the State did not present evidence that the acts alleged in Counts IV and V occurred on or about February 2001 to April 15, 2001, as specified in the charging information. S.H. testified that Ware began making sexual advances toward S.H. within one month of acquiring his hot tub in September 2000 and that their sexual relationship, which included oral sex and fondling, did not "slow down" until the summer of 2001. (Tr. p. 293). According to S.H.'s testimony, Ware fondled S.H. between ten and twenty times and there were five episodes of oral sex within the time period of December of 2000 to April of 2001. When Detective Stanley Holt of the Batesville City Police Department interviewed Ware on September 23, 2002, Detective Holt inquired, "[I]f the time frame that S[.H.] is giving is from November of 2000 to November of 2001, does that time frame sound to be correct?" (Tr. p. 86). Ware replied, "It, it sounds like, yeah, it sounds reasonable." (Tr. p. 86). Thus, the evidence indicates that the sexual relationship began in approximately October 2000, one month after Ware acquired the hot tub, and continued until at least mid-April 2001.

Although we agree with Ware that S.H.'s testimony is unclear and somewhat vague with regard to the exact dates of various parties and such, time is not an element of the crime, and the State was required to prove beyond a reasonable doubt only that Ware committed the offenses within reasonable proximity to the dates alleged in the charging information, so long as the offenses occurred before S.H.'s sixteenth birthday. Therefore, we find that the evidence supports the jury's verdict that Ware committed sexual misconduct with a minor as a Class B felony and as a Class C felony *on or about* the

dates specified in the charging information.

## II. *Admission of Evidence of Extra–Jurisdictional Acts*

■■■ Next, Ware asserts that the trial court abused its discretion by admitting evidence of acts that occurred outside of Ripley County, Indiana, in violation of Indiana Evidence Rule 404(b). We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Iqbal v. State*, 805 N.E.2d 401, 406 (Ind.Ct.App. 2004). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* However, the improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt sufficient to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Hernandez v. State*, 785 N.E.2d 294, 300 (Ind.Ct.App. 2003), *trans. denied.*

■■■ Indiana Evidence Rule 404(b) provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident [.]

In assessing the admissibility of evidence under Rule 404(b), the trial court must: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. *Iqbal*, 805 N.E.2d at 406. To determine whether the trial court abused its discretion, we employ the same test. *Id.*

■■■ Ware contends specifically that the evidence of sexual acts that Ware performed on S.H. on vacations that occurred outside of Ripley County, Indiana, before S.H. turned sixteen is not relevant to any issue other than Ware's propensity to commit the charged crimes and, thus, its probative value is substantially outweighed by its prejudicial effect. Ware argues further that because he was irreparably prejudiced by the admission of this evidence, there can be no confidence in the jury's verdict, and he is entitled to a new trial.

The State argues, conversely, that the evidence of extra-jurisdictional sexual acts was admitted for the limited purpose of showing Ware's knowledge of S.H.'s age. Evidence that Ware knew S.H. was fifteen years old is relevant to rebut Ware's defense that he did not engage in sexual acts with S.H. until S.H. turned sixteen years old.

The record indicates that the State charged Ware with four counts of sexual misconduct with a minor—two counts for the time period from December 2000 to January 2001, and two counts from February 2001 to April 15, 2001. The State elicited testimony from S.H. that he and Ware had slept naked in the same bed during a trip to West Virginia in February 2001 and that Ware had performed oral sex on him during a Caribbean cruise they took over Spring Break 2001. We simply cannot imagine how this evidence is relevant to the question of Ware's *knowledge* of S.H.'s age. Although the testimony that Ware took S.H. on several vacations may have some relevance to the State's theory that Ware was "grooming" S.H. by regaling him with vacations and other luxuries, we find that the evidence of extra-jurisdictional sexual acts appears to be relevant only to show Ware's propensity to commit

sexual misconduct with a minor. *See Iqbal,* 805 N.E.2d at 406. Thus, we find that the prejudicial effect of this evidence outweighed its probative value, and the trial court erred in admitting this evidence of extra-jurisdictional sexual acts.

 However, the jury was explicitly instructed that it could not consider the evidence of extra-jurisdiction acts as evidence of guilt. Specifically, the jury received the following limiting instruction:

> You are instructed that evidence of alleged crimes or bad acts occurring outside the jurisdiction of the State of Indiana and Ripley County may only be considered by you as evidence of knowledge on the part of the Defendant and not as evidence of guilt.

(Tr. p. 551). When a limiting instruction is given that certain evidence may be considered for only a particular purpose, the law will presume that the jury will follow the trial court's admonitions. *Hernandez,* 785 N.E.2d at 303. Given the limiting instruction in the instant case and the fact that the vacation evidence was cumulative of other properly-admitted evidence tending to demonstrate an on-going sexual relationship between Ware and S.H. lasting from approximately October of 2000 to at least April 15, 2001, we find that Ware has failed to demonstrate a substantial likelihood that the improperly-admitted evidence contributed to his verdict. *See id* at 300.

### III. *Sentencing*

Finally, Ware contends that the trial court imposed an inappropriate sentence. In particular, Ware asserts that the trial court failed to find mitigating circumstances that were clearly supported by the record. Ware also asserts that the trial court erred in imposing restitution in violation of Indiana Code § 35–50–5–3.

### A. *Standard of Review*

 Sentencing decisions are reviewed only for an abuse of discretion. *Ruggieri v. State,* 804 N.E.2d 859, 866 (Ind.Ct.App.2004). In *Rodriguez v. State,* this Court held that when considering the appropriateness of the sentence for the crime committed, courts should initially focus upon the presumptive penalties. *Rodriguez,* 785 N.E.2d 1169, 1179 (Ind.Ct.App. 2003), *trans. denied.* Trial courts may then consider deviation from this presumptive sentence based upon a balancing of factors, which must be considered pursuant to Indiana Code § 35–38–1–7.1(a), together with any discretionary aggravating and mitigating factors found to exist. *Rodriguez,* 785 N.E.2d at 1179. In order for a trial court to impose enhanced or consecutive sentences, it must (1) identify the significant aggravating factors and mitigating factors; (2) relate the specific facts and reasons that the court found to those aggravators and mitigators; and (3) demonstrate that the court has balanced the aggravators with the mitigators. *Bostick v. State,* 804 N.E.2d 218, 224–25 (Ind. Ct.App.2004). In addition to reviewing the traditional balancing of aggravating and mitigating factors, we further review the sentence to ensure that it is proportionate in light of the nature of the offense and character of the offender. *See* Ind. Appellate Rule 7(B); *Rodriguez,* 785 N.E.2d at 1179.

### B. *Aggravating Factors*

 In the instant case, the trial court found two aggravating factors: (1) the position of trust held by Ware with the victim, and (2) the imposition of probation would depreciate the seriousness of the crime. A single aggravating factor is sufficient to justify an enhanced sentence. *Thompson v. State,* 793 N.E.2d 1046, 1052 (Ind.Ct.App.2003). In addition, the same

aggravating factor may be used to enhance a sentence and to order sentences served consecutively. *Id.* Here, the trial court imposed the presumptive sentence for each count of which Ware was convicted, but the trial court also ordered the sentences for Counts I, II, and III to be served consecutive to the sentences for Counts IV and V.

■ As to the aggravating factor that Ware violated a position of trust, the trial court alluded to the testimony of Jan Priddy, S.H.'s counselor, who had testified that S.H. "expressed a lot of concern about trust being broken, the closeness of the relationship, just being drawn in for the wrong purposes...." (Tr. p. 656). The trial court also discussed the fact that Ware was serving alcohol and showing pornographic movies to minors in his home and then stated, "I think the violation of trust is so great and the damage so extensive that [ ] some jail time is warranted." (Tr. p. 776).

■ The trial court also found that the imposition of probation would depreciate the seriousness of the crime. Consideration of this factor is available when the trial court contemplates reducing a sentence from the presumptive. *Jackson v. State,* 752 N.E.2d 45, 47 (Ind.2001). At his sentencing hearing, Ware presented numerous character witnesses, who had urged the trial court to consider a suspended sentence and probation rather than imprisonment. Thus, the trial court explicitly considered this request and found that imposition of probation would depreciate the seriousness of Ware's crimes. We find that the trial court did not abuse its discretion in finding as aggravating factors that Ware violated a position of trust with S.H. and that imposition of probation would depreciate the seriousness of the crime.

## C. *Mitigating Factors*

■ Ware contends, however, that the trial court abused its discretion in failing to find a number of mitigating factors that, he argues, are significant and clearly supported by the record. An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Matshazi v. State,* 804 N.E.2d 1232, 1239 (Ind.Ct.App.2004), *trans. denied.* Additionally, trial courts are not required to include within the record a statement that it considered all proffered mitigating circumstances, only those that it considered significant. *Id.*

Here, the trial court found one mitigating factor: Ware led a law-abiding life prior to these incidents. Ware asserts that the trial court abused its discretion in failing to find the following additional mitigating factors: (1) he is likely to respond affirmatively to probation or short-term imprisonment; (2) the crime was the result of circumstances unlikely to recur; (3) imprisonment of Ware would result in undue hardship to his dependents; (4) he is unlikely to commit another crime; and (5) he is remorseful and acknowledges responsibility for his conduct.

■ Initially, we reject Ware's contention that the trial court ignored as mitigating factors that (1) Ware is remorseful and acknowledges responsibility for his conduct, and (2) that Ware would respond affirmatively to probation or short-term imprisonment. The record clearly supports that the trial court considered and explicitly rejected both of these as mitigating factors. As to the first, the trial court stated:

[E]verything presented seems to say but I am not accepting responsibility. What I did was wrong but it wasn't illegal. And I heard the evidence as well as the jury. And Mr. Ware I am here to tell you that I think they were right. It was illegal. And you knew it was illegal and you did it anyway. Despite your protestations to the contrary.

(Tr. p. 775). Thus, the trial court did not ignore this factor. Moreover, because the trial court found as an aggravating factor that probation would depreciate the seriousness of the crime, we cannot say that the court overlooked the possibility that Ware would respond affirmatively to probation or short-term imprisonment.

■ As to the undue hardship to his dependents, we observe that both of his children already live with their mother, who works and is able to support the children financially. Many people convicted of serious crimes have one or more children, and absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship. *Dowdell v. State,* 720 N.E.2d 1146, 1154 (Ind.1999). Thus, we conclude that the trial court did not abuse its discretion by failing to find this as a mitigating circumstance.

As support for the mitigating factor that the crimes of which Ware was convicted were the result of circumstances unlikely to recur, Ware references the testimony of Cindy Moody, a co-worker, good friend, and former girlfriend of Ware. During her testimony at the sentencing hearing, Moody stated twice that she truly believed that Kevin would not allow "this type of thing" to happen again. (Tr. p. 589). We fail to see how this establishes that the circumstances that led to Ware's sexual misconduct with a minor are unlikely to recur.

■ Finally, Ware contends that the trial court should have found that he is unlikely to commit another crime. In support of this contention, Ware cites to the testimony of several co-workers and two friends, all of whom testified as to Ware's integrity and trustworthiness, particularly as an employee. Again, this testimony does not go a long way toward establishing that he is unlikely to commit another crime. Moreover, we note that, according to S.H.'s testimony, Ware engaged S.H. in an on-going sexual relationship over the course of several months—this was not an isolated incident. Accordingly, it was not an abuse of discretion for the trial court not to find as mitigating factors that Ware's crimes were the result of circumstances unlikely to recur and that he is unlikely to commit another crime.

### D. *Balancing of Aggravators and Mitigators*

■ With all of this in mind, it is our determination that the trial court did not abuse its discretion in sentencing Ware. *See Ruggieri,* 804 N.E.2d at 866. Here, the record shows that trial court properly balanced aggravating and mitigating factors when sentencing Ware. Because the trial court imposed the presumptive sentence for each count and then suspended five years of Ware's sentence, it is apparent that the trial court placed significant weight on the mitigating factor that Ware has led a law-abiding life prior to this incident. We also do not find that the trial court abused its discretion by failing to consider mitigating factors that are either not significant or not clearly supported by the record. Furthermore, we cannot say that the imposition of consecutive sentences was improper, as the trial court found two aggravators that were clearly supported by the record.

## E. *Inappropriate Sentence* [1]

 This Court will not revise a sentence authorized by statute unless it is inappropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B); *Rodriguez v. State*, 785 N.E.2d at 1179. Our review of the nature of the offense reveals that Ware engaged in a sexual relationship over the course of several months with fifteen-year-old S.H., one of his adolescent son's best friends, whom he was simultaneously plying with alcohol and pornographic videos. Ware admits that he betrayed the trust of S.H., with whom he enjoyed a sort of mentorship. Ware also betrayed the trust of S.H.'s parents, who not only trusted Ware with their son but who also considered Ware to be a good friend of theirs.

As to the character of the offender, we acknowledge that Ware's co-workers and friends appear to think very highly of him. Ware, moreover, has led a law-abiding life prior to this incident. However, Ware was a forty-one-year old man when he took advantage of his role as a mentor to fondle and perform oral sex over the course of several months with a teenage boy. After due consideration of the trial court's decision, we find that Ware's sentence was appropriate in light of the nature of the offense and the character of the offender.

### F. *Restitution*

 Finally, Ware argues that the restitution granted in the Pronouncement of Sentence is in contravention of the restitution statute. I.C. § 35–50–5–3. Specifically, Ware contends that the trial court erred in ordering him to pay for all of S.H.'s counseling expenses when the statute only authorizes the trial court to order restitution to the victim for expenses incurred before the date of sentencing as a result of the crime. It is well settled that only actual expenses incurred by the victim before the date of sentencing may be included in restitution. *Mitchell v. State*, 730 N.E.2d 197, 200 (Ind.Ct.App.2000), *trans. denied.* The amount of actual loss is a factual matter that can be determined only upon the presentation of evidence. *Id.*

 Our review of the record reveals that Ware has waived this issue by failing to object·at the earliest opportunity during his sentencing hearing. *Slinkard v. State*, 807 N.E.2d 127, 128–29 (Ind.Ct. App.2004), *reh'g denied.* Normally, a failure to object to error in a proceeding, and thus preserve an issue on appeal, results in waiver. *Id.* at 129. However, a reviewing court may remedy an unpreserved error when it determines that the trial court committed fundamental error. *Id.* "Fundamental error is error such that, if not rectified, would be a denial of fundamental due process." *Id.* (quoting *Bryce v. State*, 545 N.E.2d·1094, 1096 (Ind.Ct.App.1989), *trans. denied*). An improper sentence constitutes fundamental error and cannot be ignored on review. *Id.* (internal quotation omitted). We may correct sentencing error by the trial court on appeal even though the issue was not raised below. *Id.*

The relevant portion of the restitution statute, Indiana. Code § 35–50–5–3(a)(2), authorizes the trial court to order restitution for the victim for "medical and hospital costs incurred by the victim (*before the date of sentencing*) as a result of the crime[.]" I.C. § 35–50–5–3(a)(2) (emphasis added). Here, the trial court ordered restitution for S.H. in its Pronouncement of Sentence: "The defendant shall pay for any counseling that [S.H.] receives as a

---

1. Ware argues that his sentence was "manifestly unreasonable." This standard, however, is no longer in effect. Instead, the correct standard is whether the defendant's sentence is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).

result of this matter." (Appellant's App. p. 7). We find that the trial court erred in imposing this restitution order.

■ First, the restitution order violates the restitution statute. Second, the requirement that Ware pay for *any* counseling S.H. receives as a result of this crime imposes an undue financial burden on Ware, as it requires Ware to pay for S.H.'s counseling in perpetuity. Third, the record is devoid of any evidence to determine the proper amount of restitution, *i.e.,* the cost of S.H.'s counseling up to the time of sentencing. In light of these considerations, we find that the trial court's restitution order constitutes fundamental error. Accordingly, we reverse this portion of Ware's sentence and remand with instructions to the trial court to determine the cost of any counseling S.H. received before the time of sentencing as a result of Ware's crimes. *See* I.C. 35–50–5–3(a)(2).

### CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence to sustain Ware's convictions. Further, we find that Ware is not entitled to a new trial because of the erroneously-admitted evidence of extra-jurisdictional acts. As to Ware's sentence, however, we affirm in part and reverse in part, concluding that although Ware's sentence is not inappropriate, the restitution costs imposed by the trial court constitute fundamental error. We therefore remand with instructions to the trial court to determine the cost of any counseling S.H. received before the time of sentencing as a result of Ware's crimes.

Affirmed in part, reversed in part, and remanded.

CRONE, J., and VAIDIK, J., concur.