## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 03 2017, 5:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Earl McCoy
McCoy Law Office
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael D. Houser,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 3, 2017

Court of Appeals Case No.
79A05-1603-CR-638

Appeal from the Tippecanoe Circuit Court

The Honorable Thomas H. Busch, Judge

Trial Court Cause No.
79C01-1502-FA-3

**Vaidik, Chief Judge.**

# Case Summary

Michael Houser appeals his convictions for child molesting and sexual misconduct with a minor, challenging certain evidentiary rulings by the trial court and the sufficiency of the State's evidence. In the alternative, he appeals his seventy-five-year sentence. We affirm.

# Facts and Procedural History

In late 2010, Houser moved to West Lafayette with his wife Ellica, their young son M.H., and Ellica's daughter (Houser's stepdaughter), K.N. K.N., who was twelve or thirteen years old and was in sixth grade at the time, became best friends with A.E., who at the time was eleven or twelve years old. A.E. spent a lot of time at K.N.'s house, including many overnights.

In February 2012, K.N. reported to her school counselor, Christina Morales, that she wanted out of her house because of certain things that were happening there. She did not allege any sexual abuse by Houser, but she was taken to Heartford House, a forensic interview facility in Lafayette. There, she was interviewed by Dawn Gross, an investigator with the Tippecanoe County Prosecutor's Office. K.N. "related two or three touching incidents" involving Houser but did not tell Gross "everything that happened" to her because she was "scared" that "nobody would believe me and I didn't want them to judge me." Tr. pp. 288, 307. A few days later, Jacob Amberger, who at the time was a detective with the Tippecanoe County Sheriff's Department and who had

watched the Heartford House interview of K.N., interviewed A.E. at the girls' school. A.E. said "some things" but did not "make any disclosures about being sexually molested or abused by anybody[.]" *Id*. at 409.

[4] Over the next year-and-a-half, K.N.'s and A.E.'s disclosures evolved. In October 2013, K.N. claimed that Houser had molested her "[o]ver 100 times." *Id*. at 309. A.E. was ultimately interviewed approximately "4 or 5 times," *id*. at 344, and in mid-to-late 2013 told both her mother and Gross that she had been raped by Houser.

[5] In February 2015, the State charged Houser with ten felonies. The most serious were two counts of Class A felony child molesting alleging that he had sex with both K.N. and A.E. before they turned fourteen. The State also charged Houser with a third count of child molesting alleging that he fondled or touched K.N. before she turned fourteen; five counts of sexual misconduct with a minor for conduct alleging abuse of K.N. after she turned fourteen; and one count of child exploitation alleging that he took sexual photographs of K.N. Finally, the State charged both Houser and Ellica with one count of neglect of a dependent.

[6] K.N. and A.E. were the State's main witnesses at trial. K.N. testified that Houser started abusing her "[m]aybe a few weeks" after they moved to West Lafayette (in late 2010, when K.N. was twelve or thirteen years old), *id*. at 286, and continued to do so until February 2012, which is when K.N. made a report to her school counselor. She testified that Houser had sex with her and touched her breasts and vagina on multiple occasions—"too many to count," *id*. at

322—both before and after her fourteenth birthday in December 2011. K.N. also testified, over Houser's objection, about an incident that occurred during the summer of 2011 in which she was on a boat with Houser and Ellica, K.N. and Ellica were naked, and Houser took photos of them while they were holding their legs up.

[7] A.E. took the stand after K.N. and testified that Houser had raped her right before or during her seventh grade school year (when she was twelve or thirteen years old). One day at Houser's house, Houser "stopped" her, picked her up, "threw" her on a couch, "ripped off" all of her clothes, "pinned" her down, and "penetrated" her. *Id*. at 340-42. She explained that it "hurt really bad" and that she cried. *Id*. at 342. She also testified that Houser told her that he would "hurt" her if she told anybody what he had done. *Id*. at 343. When asked why she did not immediately report the rape, A.E. said that she was "afraid" because she "didn't know what would happen." *Id*. at 345.

[8] Amberger testified regarding his investigation of the case. After he said that he had information about "a cell phone and the cell phone being used to take some photographs," *id*. at 409, the prosecutor questioned him as follows:

> Q: Detective Amberger you mentioned something about pictures at any point were pictures--did you look for pictures?
>
> A: Yes I did.

> Q: And did you find any pictures that matched any description that [K.N.] had provided?
>
> A: There were some pictures found on a cell phone. It was a-- they were close up photographs of a woman's--

*Id.* at 412-13. At that point Houser's attorney objected. During the ensuing sidebar, the attorneys discussed the fact that Amberger had found photos of vaginas on Houser's phone but had been unable to determine whose vaginas were depicted. The prosecutor explained that she was "trying to get into" the course of Amberger's investigation, not "these actual photographs," that she thought Amberger may have been trying to "help our case," and that she thought Amberger would say "no" when she asked him if he found "any photographs matching the description that [K.N.] provided." *Id.* at 414. The trial court sustained the defense objection and admonished the jury to "disregard the last answer" but allowed the prosecutor to ask Amberger a leading question to get him to say that he had not found any photos matching K.N.'s description. *Id.* at 414-15. As revealed by the exchange that followed, that plan largely failed:

> Q: Detective Amberger [K.N.] described some photographs correct?
>
> A: Yes.
>
> Q: And just a yes or no answer, did you ever find any photographs that match the exact description that [K.N.] gave you?

A: Yes. Exact description trying to remember here. I would say yes. They were close.

Q: Specifically did you find any photographs with her and her mother?

A: No.

*Id*. at 415. This prompted the court to admonish the jury, again, "that you are to disregard the testimony about any photographs that he might have found and that should not be part of your consideration in this case at all." *Id*. at 415-16. After a few more questions by the attorneys, the trial court asked the jury if they had any questions for Amberger. The jurors submitted two questions, both relating to the photos found on Houser's phone. This resulted in a third admonishment from the court:

> I had stricken from the record any testimony about any photographs that were found in the house you are to completely disregard anything that you may have heard on that subject and you are not to allow that subject to affect your deliberations in any way whatsoever. You didn't hear that testimony, it didn't exist.

*Id*. at 421-22.

[9] The State also called Gross as a witness. She testified that she is a child forensic interviewer, described what a forensic interviewer does, and detailed her qualifications to do so. She said that she has conducted "[o]ver 1500" such interviews in her career. *Id*. at 430. She then testified about "disclosures" by

children—revelations of sexual abuse, domestic violence, or witnessing a crime. *Id*. Over Houser's objection, she was allowed to testify that disclosing is "a process," not "a onetime thing," and that not every interview results in a disclosure. *Id*. at 430, 435. She added that children usually do not disclose immediately, sometimes because of shame, guilt, or threats. *Id*. at 435. Gross also testified that she interviewed K.N. and A.E. and that both of them made disclosures to her. Beyond acknowledging that A.E. made disclosures "particularly related to being raped," *id*. at 444, Gross did not go into the details of the disclosures.

[10] Before the jury began its deliberations, the State dismissed three of the five sexual-misconduct charges and the child-exploitation charge, but the jury found Houser guilty on the remaining six charges.[1] The court ordered Houser to serve consecutive sentences of forty years and thirty-five years for the Class A felony child molesting of K.N. and A.E., respectively, and imposed concurrent terms on the other convictions, for a total sentence of seventy-five years.

[11] Houser now appeals.

---

[1] The jury found both Houser and Ellica guilty of neglect of a dependent. With regard to Houser, the trial court "merged" that verdict into one of the child-molesting counts, so there is no conviction or sentence for him to challenge on the neglect-of-a-dependent count. Ellica appealed her conviction, and we affirmed. *See Ellica Ann Houser v. State*, No. 79A02-1603-CR-556 (Ind. Ct. App. Dec. 27, 2016).

# Discussion and Decision

Houser raises three issues on appeal. First, he argues that the trial court should not have allowed the State to present certain evidence. Second, he asserts that the State presented insufficient evidence to support his convictions. Third, he challenges his seventy-five-year sentence.

# I. Admission of Evidence

Houser contends that the trial court should not have allowed the State to present two pieces of testimony: Gross' testimony about the disclosure process, and K.N.'s testimony that Houser took photos of her while she was naked. Generally, our trial courts enjoy broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only for an abuse of that discretion. *Halliburton v. State*, 1 N.E.3d 670, 675 (Ind. 2013). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it." *Id*.

## A. Gross' Testimony

Houser first argues that the trial court abused its discretion when it allowed Gross to testify that it is common for "child victims to not disclose sexual abuse until long after the abuse occurred" and for "children to fail to disclose everything initially." Appellant's Br. pp. 12-13. Houser is correct that this testimony served to bolster the credibility of K.N. and A.E., both of whom alleged that they had been abused months or even years earlier. He is also correct that such testimony is generally inadmissible under Evidence Rule

704(b), which provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." But Houser acknowledges that our Supreme Court has held, in cases like *Sampson v. State*, 38 N.E.3d 985 (Ind. 2015), and *Steward v. State*, 652 N.E.2d 490 (Ind. 1995), that such testimony becomes admissible if the defendant opens the door to it. Here, Houser did exactly that when, as he himself puts it, he "point[ed] out the fact that K.N. and A.E. made prior inconsistent statements" about whether Houser had abused them. Appellant's Br. p. 14. Therefore, we affirm the trial court's decision to allow the challenged testimony.[2]

## B. K.N.'s Testimony

[15] Houser argues that the trial court should not have allowed K.N. to testify that Houser took photos of her while she was naked.[3] He contends that the only relevance of this testimony was to show that he has a propensity to commit sex

---

[2] Houser relies in part on *Hamilton v. State*, 43 N.E.3d 628 (Ind. Ct. App. 2015), *aff'd on reh'g*, 49 N.E.3d 554 (Ind. Ct. App. 2015), *trans. denied*. There, we reversed the defendant's convictions for child molesting because the trial court had allowed a forensic interviewer to testify that she had not observed any signs of coaching when talking to the child accusers. In reaching this conclusion, however, we held that the defendant had **not** opened the door to the testimony by asking the accusers "whether anyone had told them what to say in court." *Id*. at 634. In fact, the State did not even argue that the defendant had opened the door. *Id*. Here, Houser does not deny that he opened the door to Gross's testimony about the disclosure process when he highlighted K.N.'s and A.E.'s inconsistent statements.

In the alternative, Houser suggests that our Supreme Court's decisions about defendants opening the door in this context are "dangerous and poorly reasoned." Appellant's Br. p. 14. That is a matter for Houser to take up with our Supreme Court.

[3] The State suggests that Houser did not object to this testimony and must therefore establish fundamental error. Having reviewed the lead-up to the testimony, we believe that Houser adequately preserved his objection. *See* Tr. pp. 272-75.

offenses, in violation of Evidence Rule 404(b). While Houser is correct that Evidence Rule 404(b) bars "[e]vidence of a crime, wrong, or other act" for the purpose of proving "a person's character in order to show that on a particular occasion the person acted in accordance with the character," the rule also establishes that such evidence can be admitted if it is relevant for some other purpose. Here, we agree with the State that K.N.'s testimony was relevant to show that Houser was "grooming" K.N., that is, preparing her for further sexual contact with him. This Court has rejected 404(b) challenges to grooming evidence on several occasions. *See, e.g.*, *Guffey v. State*, 42 N.E.3d 152, 161 (Ind. Ct. App. 2015), *trans. denied*; *Piercefield v. State*, 877 N.E.2d 1213, 1215-17 (Ind. Ct. App. 2007), *trans. denied*; *see also Ware v. State*, 816 N.E.2d 1167, 1175 (Ind. Ct. App. 2004) ("[T]he testimony that Ware took S.H. on several vacations may have some relevance to the State's theory that Ware was "grooming" S.H. by regaling him with vacations and other luxuries[.]"). The trial court did not abuse its discretion when it allowed K.N.'s testimony.[4]

[16] In a related argument, Houser contends that even if K.N.'s testimony was properly admitted, the jury was irreparably tainted by Amberger's subsequent testimony about finding photos on Houser's phone. As described above, after being instructed to disregard that portion of Amberger's testimony, the jury still sought to ask questions about the photos. Houser contends that the jury's

---

[4] Houser notes that "K.N. testified that Houser had already been molesting her for sometime before these photographs were taken so this evidence does not establish 'grooming' by Houser." Appellant's Br. p. 17. He cites no authority for the proposition that grooming can only occur pre-abuse.

desire to do so demonstrated that it was "impossible" for the jury to ignore the photos, that there could be "no confidence in the jury's verdicts," and that therefore the trial court should have declared a mistrial. Appellant's Br. pp. 17, 19, 32. However, Houser did not ask the court to declare a mistrial, so he waived this issue for purposes of appeal. *See Berkman v. State*, 976 N.E.2d 68, 74 (Ind. Ct. App. 2012), *trans. denied*.

[17] Recognizing his waiver, Houser argues that the trial court's failure to declare a mistrial on its own constituted fundamental error. The doctrine of fundamental error is an extremely narrow exception to the waiver rule that requires the defendant to show that the alleged error was so prejudicial to the defendant's rights as to make a fair trial impossible. *See Gavin v. State*, 41 N.E.3d 1038, 1042 (Ind. Ct. App. 2015). The defendant must show that, under the circumstances, the trial judge erred in not raising the issue because the alleged error (1) constituted a clearly blatant violation of basic and elementary principles of due process and (2) presented an undeniable and substantial potential for harm. *Id.*

[18] Houser has not satisfied this onerous standard. After the jury submitted questions about the photos on Houser's phone, the trial court admonished it, in no uncertain terms, as follows:

> I had stricken from the record any testimony about any photographs that were found in the house you are to completely disregard anything that you may have heard on that subject and you are not to allow that subject to affect your deliberations in

any way whatsoever. You didn't hear that testimony, it didn't exist.

Tr. pp. 421-22. Houser acknowledges that "the law will presume that the jury will follow the trial court's admonishments," Appellant's Br. p. 18 (citing *Ware*, 816 N.E.2d at 1176), and he gives us no reason to think that the jury's questions in this case were the result of willful disregard for the court's earlier admonishments as opposed to uncertainty about them. The court's final admonishment left no doubt about the irrelevance of the photos. The trial court did not commit fundamental error by failing to declare a mistrial.

## II. Sufficiency of the Evidence

[19] Next, Houser challenges the sufficiency of the State's evidence. He acknowledges that K.N. and A.E. both testified that Houser abused them and that criminal convictions can be based solely on the uncorroborated testimony of a victim. *See, e.g., Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). However, he argues that his convictions should nonetheless be reversed under the incredible dubiosity rule, which allows an appellate court to "impinge on the jury's responsibility to judge the credibility of the witnesses only when it has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015) (citations omitted). Our Supreme Court recently clarified that "the appropriate scope of the incredible dubiosity rule as utilized in Indiana and other jurisdictions requires that there be: 1) a sole testifying witness; 2)

testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Id*. at 756.

[20] Here, Houser's argument focuses on alleged flaws in K.N.'s and A.E.'s testimony. But the State also presented circumstantial evidence in the form of testimony from A.E.'s mother, who testified that Houser was "clingy" and "controlling" with K.N., Tr. p. 376, and that A.E. developed behavioral problems after she started spending time with K.N. and at K.N.'s house, and from Gross, who testified about the disclosure process generally and the timing of K.N.'s and A.E.'s disclosures specifically. Because Houser cannot satisfy the first and third prongs of the *Moore* standard, we need not address the second prong.

# III. Sentencing

[21] Houser contends that even if his convictions stand, his sentence should not. He argues that the trial court erred in its finding of aggravating and mitigating factors and that it imposed an inappropriate sentence that we should reduce pursuant to Indiana Appellate Rule 7(B).

## A. Aggravating and Mitigating Factors

[22] Houser disputes the trial court's finding of aggravating and mitigating factors. Our trial courts enjoy broad discretion in finding such factors, and we will reverse only for an abuse of that discretion. *Coy v. State*, 999 N.E.2d 937, 946 (Ind. Ct. App. 2013).

In sentencing Houser, the trial court found four aggravating circumstances: (1) Houser was in a position having care, custody, or control of K.N.; (2) Houser threatened to harm A.E. if she told anyone what Houser did to her; (3) the "seriousness of the crime with multiple victims and multiple acts over a lengthy period of time and the element of force"; and (4) Houser was in a position of trust as to A.E. Appellant's App. Vol. II p. 55. It also found two mitigating circumstances: Houser's "physical illness" and his "limited intelligence." *Id.*

Houser first argues that the trial court should have found as a mitigating factor that his incarceration would impose an undue hardship on his "special needs son." Appellant's Br. p. 25. However, he does not tell us how old his son is, what his son's special needs are, or why the hardship imposed by his incarceration will be "undue." Therefore, we cannot say that the trial court abused its discretion in this regard. *See*, *e.g., Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999) ("Many persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship.").

Houser also attacks two aspects of the trial court's "seriousness of the crime" finding: the existence of multiple victims and "the element of force." Houser contends that because he was separately convicted and sentenced for crimes against both K.N. and A.E., reliance on "multiple victims" as an aggravating fact amounts to an improper "double enhancement." Appellant's Br. p. 26. We disagree. It is entirely proper for a trial court to rely on the existence of multiple victims as a basis for imposing consecutive sentences, as the trial court

did here. *See, e.g., O'Connell v. State*, 742 N.E.2d 943, 952 (Ind. 2001). As for the use of force, Houser argues that it should not be given aggravating weight because "it only applied to one of the two alleged victims" (A.E.). Appellant's Br. p. 26. He cites no authority in support of this proposition, and we are aware of none. And even if Houser were right about the use of force (or the multiple victims), he says nothing about the other fact cited by the trial court: that his acts of abuse were not isolated but were instead committed over a lengthy period of time. For these reasons, we cannot say that the trial court abused its discretion by finding the "seriousness of the crime" to be an aggravating factor.

## B. Appropriateness

Houser also asks us to exercise our authority under Indiana Appellate Rule 7(B), which provides that an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014) (citing *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)). Because we generally defer to the judgment of trial courts in sentencing matters, defendants have the burden of persuading us that their sentences are inappropriate. *Schaaf v. State*, 54 N.E.3d 1041, 1044-45 (Ind. Ct. App. 2016).

Here, Houser tells us nothing about his "character." Regarding the nature of his offenses, he notes only that "[t]here were no injuries to the victims" (we assume he is referring to physical injuries), that "[t]here was no evidence of oral sex, anal sex, toys, devices, restraints, or deviate sexual conduct of any kind," and that "the victims in this case were 13 or 14 years of age when the crimes were committed," meaning that they were "as old as any child molesting victims could be since all child molesting cases involve children under the age of 14." Appellant's Br. p. 30. All true, but the aggravating factors found by the trial court loom large in our analysis. One of Houser's victims was his own stepdaughter and was in his care, custody, and control, and Houser abused that position on multiple occasions over an extended period of time. He was also in a position of trust with A.E., who spent a significant amount of time at his house. He forced her to have sex with him and then threatened to harm her if she told anyone. Houser suggests that his sentence is excessive "compared to the fact patterns set forth in many child molesting or sex offense cases," *id.*, but he does not identify any specific appellate decisions in support of that claim. He has failed to persuade us that the sentence imposed by the trial court is inappropriate.

Affirmed.

Bradford, J., and Brown, J., concur.