Brian SOUTHERN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 13A01–0703–CR–115.

Court of Appeals of Indiana.

Dec. 19, 2007.

Transfer Denied Feb. 28, 2008.

Steven E. Ripstra, Ripstra Law Office, Jasper, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Brian Southern ("Southern") appeals his conviction and forty-year sentence for Child Molesting, as a Class A felony.[1]  We affirm.[2]

### Issues

■ Southern raises five issues.  We reorder and restate those issues that have not been waived[3] as:

---

1.  Ind.Code § 35–42–4–3(a).

2.  A copy of the pre-sentence investigation report on white paper is included within the appellant's appendix.  We remind the parties that Ind. Appellate Rule 9(J) requires that "[d]ocuments and information excluded from public access pursuant to Administrative Rule 9(G)(1) shall be filed in accordance with Trial Rule 5(G)."  Ind. Administrative Rule (G)(1)(b)(viii) requires that "[a]ll pre-sentence reports pursuant to Ind.Code § 35–38–1–13" are "excluded from public access" and "confidential."  The inclusion of the report on white paper in the appellant's appendix is contrary to Trial Rule 5(G) that states in pertinent part:  "Every document filed in a case shall separately identify information excluded from public access pursuant to Admin.  R. 9(G)(1) as follows:  (1) Whole documents that are excluded from public access pursuant to Administrative Rule 9(G)(1) shall be tendered on light green paper or have a light green coversheet attached to the document, marked 'Not for Public Access' or 'Confidential.' "

3.  Southern also raised an issue of error as to the admission of the results of his polygraph examination.  However, he did not lodge a contemporaneous objection during the admission of the exhibit or the testimony of the examiner.  This failure to lodge an objection results in the waiver of the issue on appeal. *Jackson v. State,* 735 N.E.2d 1146, 1152 (Ind.

I. Whether the trial court erred in admitting testimony pertaining to statements made by Southern during a second interview with police;

II. Whether the trial court erred in permitting the jury to view the video of Southern's polygraph examination in which he was wearing his jail uniform;

III. Whether the trial court erred in permitting testimony regarding two other uncharged instances of sexual contact between the victim and Southern; and

IV. Whether the trial court abused its discretion in sentencing Southern.

### Facts and Procedural History

On July 4, 2005, eleven-year-old I.B. traveled with her friend's mother, Marche Bristow ("Marche"), to Marengo, Indiana. While in Marengo, Marche and I.B. saw a number of Marche's friends, including Tony Byerly, Shane Cole, and Southern. Sometime after that, Marche began dating Southern. Throughout the rest of the summer, I.B., Marche, and Shay, I.B.'s friend and Marche's daughter, attended several cookouts at Tony Kay's ("Kay") home in Marengo. At these cookouts, I.B. would drink alcohol and occasionally smoke marijuana. At the second cookout, I.B. told Southern that she thought he was cute. Later in the evening, I.B. and Southern began engaging in holding hands and kissing. At some point in the evening, I.B. sat on a couch beside Southern and put her head on his shoulder. Southern responded by putting his arm around I.B., placing his hand on her bottom. One of the guests at the party objected to Southern's behavior, causing a small argument.

I.B. became upset and ran out of the house to a neighbor's garage.

Soon thereafter, Southern joined I.B. in the neighbor's garage. According to I.B.'s testimony, Southern told I.B. to sit on his lap, and she complied. The two conversed for a while before Southern suggested they walk over to a nearby school. I.B. consented. Holding hands, the two walked to the wooden deck behind the Marengo elementary school. Upon reaching their destination, Southern took off his t-shirt, prompting I.B. to follow suit until they were both undressed. While undressing, Southern asked I.B. why she had to be eleven. Then, I.B. and Southern engaged in intercourse on the deck, but stopped after I.B. said that it hurt and told him to stop. Southern and I.B. put on their clothes and returned to Kay's home where they both spent the night. The next time I.B. went to the bathroom she found blood in her underwear. Later that weekend, I.B. told Shay about having sex with Southern.

The next morning, I.B. and Shay went with Marche back to her home to pick up some clothes and then returned to Kay's home to stay another night. That evening, Kay became ill. Southern and I.B. took Kay's car and left to buy some medicine for Kay. First, they stopped at the home of Southern's friend to see if he had any medicine. He did not. Leaving empty-handed, Southern drove I.B. to a park in Orange County. After sitting in the car for a while, Southern and I.B. began to kiss, exited the car, and went over to a small building in the park. Then the two undressed and engaged in intercourse. Afterwards, the two dressed and returned

2000). Moreover, Southern, his counsel, and the State entered into a stipulation that the results would be admitted at trial.

to Kay's home, informing Kay that they were not able to find any medicine.

I.B. and Shay stayed the night at Kay's home and returned to Marche's home the next day. They spent most of the day watching television. That evening, Kay picked up the threesome and drove them to his house. Southern was at Kay's home when they arrived. After I.B. had been drinking alcohol, Southern gave I.B. a ride on his moped. They rode over to the house of Southern's friend, Gilbert Abell ("Abell"), who was out on his porch drinking with his wife. Before they arrived, Southern told I.B. to tell the Abells that she was nineteen. While visiting with the Abells, I.B. and Southern hugged and kissed, and Southern gave I.B. a beer. The Abells offered to let I.B. and Southern sleep in the upstairs bedroom for the night. Once they were in the bedroom, Southern asked I.B. about having sex to which I.B. agreed. Instead of spending the night after having sex, they left to return to Kay's home. That night, I.B. told Shay about having sex again with Southern.

In the following weeks, I.B.'s older sister, Brandy, learned about what had occurred between Southern and I.B. and contacted the police. Crawford County Sheriff Deputy Mark Bye ("Deputy Bye") responded to the initial report, meeting Brandy outside Southern's residence. Deputy Bye interviewed Brandy and I.B. to obtain the facts of the accusations. When he was finished speaking with the girls, he went up to the residence and interviewed Southern regarding the accusations. Southern denied having sex with I.B.

Deputy Bye interviewed Southern a second time in a conference room at the Division of Family and Children along with a caseworker. Southern was not advised of his *Miranda* rights until part way into the interview. Southern was cooperative during the entire interview and did not indicate that he wanted to leave or terminate the interview. Throughout the interview, Southern denied having sexual relations with I.B. At the end of the interview, Southern was placed under arrest.

On September 1, 2005, the State charged Southern with one count of Child Molesting, as a Class A felony, for acts occurring in Crawford County during the month of August of 2005. On November 9, 2005, the State, defense counsel, and Southern signed a Stipulation as to Admission of Polygraph Examination Result. Indiana State Police polygraph examiner, Delmar Gross, administered a polygraph test to Southern and testified at the jury trial as to the waiver that Southern signed before taking the test and the results of the test. The administration of the polygraph test was videotaped. The jury trial was held on October 23rd through the 31st of 2006. The jury found Southern guilty as charged. Southern now appeals.

## Discussion and Decision

### I. *Admission of Statements from Second Interview*

Southern argues that the trial court erred in permitting Deputy Bye to testify as to the statements Southern made during his second interview with police because he had not been informed of his *Miranda* rights.

When an accused is subjected to custodial interrogation, the State may not use statements stemming from the interrogation unless it demonstrates the use of procedural safeguards effective to secure the accused's privilege against self-incrimination. *Payne v. State*, 854 N.E.2d 7, 13 (Ind.Ct.App.2006). The *Miranda* warnings apply only to custodial interrogation because they are meant to overcome the inherently coercive and police-dominated

atmosphere of custodial interrogation. *Id.* To be in custody for purposes of *Miranda,* the defendant need not be placed under formal arrest. *Id.* Instead, the determination of whether the defendant was in custody turns upon whether the individual's freedom has been deprived in a significant way or if a reasonable person in his position would believe he is not free to leave. *Id.* For this analysis, we examine all of the objective circumstances surrounding the interrogation. *Id.*

■ Here, an interview was set up with Southern to be conducted at the Division of Family and Children. Southern concedes that he voluntarily attended the meeting where Deputy Bye and a caseworker questioned him. Deputy Bye testified that Southern was cooperative in answering their questions and did not make any indications that he wished to terminate the interview. At some point during the interview, Deputy Bye informed Southern of his *Miranda* rights. To this information, Southern responded that he understood his rights and was willing to answer questions. The interview did not occur at a police station nor is there evidence that there was a police-dominated atmosphere. Also, there is no contention that the interview was systematic or exhaustive. *See Payne,* 854 N.E.2d at 14. Based on these circumstances, Southern was not in formal custody nor was his freedom of action limited in any significant way during the interview. A reasonable person in Southern's shoes would not have believed that he was not free to resist the entreaties of his interviewers. *See Luna v. State,* 788 N.E.2d 832, 834 (Ind.2003). We therefore conclude that the admission of this testimony at trial was not error.

### II. Viewing of the Polygraph Examination Video

■ Southern argues that the trial court erred in permitting the jury to view the remainder of the polygraph video after it was brought to the court's attention that Southern was depicted in his jail uniform. An individual accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on the grounds of suspicion, indictment, continued custody, or other circumstances not offered as proof at trial. *Taylor v. Kentucky,* 436 U.S. 478, 485, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). However, this does not mean that every practice tending to single out the accused from everyone else in the courtroom must be struck down. *Holbrook v. Flynn,* 475 U.S. 560, 567, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986).

Essentially, Southern argues that the presumption of innocence was impaired when the jurors viewed the polygraph video in which he was wearing jail clothing, analogizing his appearance in the video to standing trial in jail attire. We find no merit in this contention.

■ "In order for there to be a constitutional violation resulting from a defendant standing trial in jail attire, the defendant must show he was compelled to wear jail attire, and that it was readily identifiable as such." *Shackelford v. State,* 498 N.E.2d 382, 384 (Ind.1986) (citing *Estelle v. Williams,* 425 U.S. 501, 512, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)). In *Estelle v. Williams,* the Supreme Court indicated a juror's judgment may be affected by the constant reminder of the accused's condition implicit in his appearance at trial in jail clothing. *Estelle,* 425 U.S. at 504–505, 96 S.Ct. 1691. Such clothing is likely to be a continuing influence throughout the trial. *Id.* at 505, 96 S.Ct. 1691. The circumstances at hand are distinguishable from those in *Estelle* because the video was only a small portion of the trial as opposed to a

defendant wearing a jail uniform during his entire trial.

The facts before us are more similar to those in *Kelley v. State*, where the Indiana Supreme Court held that a photograph admitted into evidence depicting Kelley in his jail uniform did not create a constant and continuing reminder of the defendant's condition to result in a constitutional violation. *Kelley v. State*, 460 N.E.2d 137, 139 (Ind.1984). Here, the video consumed only a small portion of the four-day trial. Moreover, there is no evidence that defense counsel requested that Southern be permitted to wear civilian clothes during the examination or objected to the admission of the video after viewing it prior to trial. Finally, Southern does not allege that he requested the trial court's proffered limiting jury instruction as to Southern's appearance in his uniform. We therefore conclude that the trial court did not err in permitting the jury to view the video.

### III.   Testimony of Other Uncharged Incidents

Next, Southern argues that the trial court erred in permitting testimony of alleged subsequent sexual contact between him and I.B. in violation of Indiana Evidence Rule 404(b), which prohibits evidence of other bad acts. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Stringer v. State*, 853 N.E.2d 543, 546 (Ind.Ct.App. 2006). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Ind. Evidence Rule 401. "Generally speaking, relevant evidence is

admissible, and irrelevant evidence is inadmissible." *Sandifur v. State*, 815 N.E.2d 1042, 1048 (Ind.Ct.App.2004), *trans. denied;* Ind. Evidence Rule 402. Relevant evidence may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ind. Evidence Rule 403. These basic tenets of evidence are utilized in addressing the specific issue of when evidence of other bad acts is admissible.

Indiana Evidence Rule 404(b) provides in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

In determining the admissibility of evidence under Rule 404(b), the trial court must: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. *Ware v. State*, 816 N.E.2d 1167, 1175 (Ind. Ct.App.2004). We employ the same test to determine whether the trial court abused its discretion. *Id.*

The effect of Rule 404(b) is that evidence is excluded only when it is introduced to prove the "forbidden inference" of demonstrating the defendant's propensity to commit the charged crime. *Sanders v. State*, 724 N.E.2d 1127, 1130–1131 (Ind.Ct.App.2000). The paradigm of inadmissible evidence under Rule 404(b) is a crime committed on another day in another place, evidence whose only apparent purpose is to prove the defendant is a

person who commits crimes. *Swanson v. State*, 666 N.E.2d 397, 398 (Ind.1996). Because evidence of other bad or uncharged acts can often be unduly prejudicial, however, exceptions to the 404(B) rule of permitting such evidence demonstrating motive, intent, preparation, plan, etc., are to be applied cautiously. *Brown v. State*, 577 N.E.2d 221, 226 (Ind.1991).

■■■ Southern alleges that the testimony of the victim regarding alleged sexual acts that Southern and I.B. engaged in within Orange County after the charged incident in Crawford County was used solely as character evidence and that its probative value is substantially outweighed by its prejudicial effect. Furthermore, he argues that the prejudicial effect was not harmless because I.B.'s testimony was the only evidence that sexual intercourse occurred, creating a "credibility contest" between Southern and I.B. Appellant's Brief at 14.

■■■ Although cases typically involve the issue of whether *prior* bad acts of the defendant are admissible, the wording of Trial Rule 404(b) does not suggest that it only applies to prior bad acts and not subsequent ones. Thus, the test under 404(b) should also be employed when determining the admissibility of evidence of subsequent crimes or wrongs. *See U.S. v. Morsley*, 64 F.3d 907, 911 (4th Cir.1995) (Acts occurring after the charged conduct are also admissible under the Federal Rule of Evidence 404(b) if it satisfies the same test for prior acts); *U.S. v. Mares*, 441 F.3d 1152, 1157 (10th Cir.2006) ("It is settled in the Tenth Circuit that evidence of 'other crimes, wrongs, or acts' [prohibited by Federal Evidence Rule 404(b)] may arise from conduct that occurs *after* the charged offense." (emphasis in original)),

cert. denied, —— U.S. ——, 127 S.Ct. 3048, 168 L.Ed.2d 757 (2007).[4]

The State charged Southern with one count of child molestation, as a Class A felony, for the time period of August 1st to 30th of 2005. The State elicited testimony from I.B. that the day after the incident in Crawford County she and Southern traveled to a park in Orange County, where they had sex. She also testified that the following night, they rode Southern's moped to the home of Southern's friend, Gilbert Abell. I.B. testified that after socializing with the Abells, she and Southern engaged in intercourse in the Abells' upstairs bedroom. Gilbert testified that his home is located in Orange County.

First, the State argues that the evidence was properly admitted because the three episodes fall within the plan exception to 404(b). The State contends that the evidence demonstrated that in each incident Southern lured I.B. away from others at Kay's home in order to molest her. Prior to the adoption of Evidence Rule 404(b), our Supreme Court permitted the admission of evidence of prior crimes under the "common scheme or plan" rule of the existing common law rule of evidence. *Spires v. State*, 670 N.E.2d 1313, 1315 (Ind.Ct. App.1996) (citing *Lay v. State*, 659 N.E.2d 1005, 1009 (Ind.1995)). The "common scheme or plan" exception required that the uncharged crime be tangibly connected to the one for which the defendant was on trial. *Id.* With the promulgation of Evidence Rule 404(b), the exception to the rule narrowed by admitting only evidence that demonstrates a plan of the defendant. *Id.*

Rarely will evidence be found that clearly sets forth a detailed plan of action to be

---

**4.** Although the analysis under Indiana's version of 404(b) has evolved on its own since its adoption in *Lannan v. State*, 600 N.E.2d 1334 (Ind.1992), the federal version was the original blueprint of our state's version of the rule and is still a source of guidance.

followed by the defendant. Rather, the plan will be formulated in the mind of the defendant and the action unfolds to reveal the defendant's plan. The State presented evidence that Southern lured I.B. away from others to molest her. The State relied on the fact that the three incidents occurred within three successive evenings, each of which started at Kay's home. These facts are sufficient to demonstrate that Southern had a preconceived plan that was a driving force in the progression of the successive events. Moreover, I.B.'s testimony clearly demonstrates a scheme by Southern to lure her to remote and secluded places to have sex with an eleven year old child. Based on these circumstances, we find that the subsequent instances of sexual intercourse fall within the plan exception to 404(b). Therefore, the trial court did not err in admitting this evidence. Additionally, concluding that the evidence is admissible, we need not discuss whether its admission was harmless.

### IV. Sentencing

Finally, Southern contends that the trial court abused its discretion in sentencing him to forty years imprisonment, because the nature of Southern's criminal history cannot be considered a significant aggravator and the trial court failed to recognize mitigators that were supported by the record.

Sentencing decisions rest within the discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007). As long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion occurs when the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quoting *K.S. v. State*, 849 N.E.2d 538,

544 (Ind.2006)). In *Anglemyer*, our Supreme Court noted a few examples of ways in which a trial court abuses its discretion:

One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence-including a finding of aggravating and mitigating factors if any-but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

*Id.* at 490–491. However, under the new advisory statutory scheme, the relative weight or value assignable to reasons properly found, or to those that should have been found, is not subject to review for abuse of discretion. *Id.* at 491.

In sentencing Southern, the trial court found two aggravating circumstances, Southern's criminal history and that Southern was on probation at the time of the offense, and one mitigating circumstance, that a lengthy prison sentence would be a hardship on his family. Concluding that the aggravating circumstances far outweighed the mitigating factor, the trial court sentenced Southern to forty years imprisonment.

As for Southern's argument that the trial court assigned too much weight to his criminal record as an aggravating factor, our Supreme Court in *Anglemyer* makes clear that we cannot review the weight a trial court assigns to an aggrava-

tor or mitigator in weighing the factors found for an abuse of discretion. *Id.*

 Southern also makes a passing argument that the trial court abused its discretion because "[t]he record supported mitigating factors not recognized, nor considered, by the trial court." Appellant's Brief at 28. "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both *significant* and clearly supported by the record." *Anglemyer*, 868 N.E.2d at 493 (emphasis added). In his scant argument on this point, Southern has not met his burden. We therefore conclude that the trial court did not abuse its discretion in sentencing Southern.

### Conclusion

In summary, we find that there was no error in admitting Southern's statements from a second interview, permitting the jury to view the polygraph video which depicted Southern in his jail uniform, or in the admission of evidence of subsequent acts. Finally, the trial court did not abuse its discretion in sentencing Southern to forty years imprisonment.

Affirmed.

BAKER, C.J., and VAIDIK, J., concur.