**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**BRUCE C. BADE**
Bade and Bade
Hartford City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANN L. GOODWIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON E. HOUGH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 05A04-1107-CR-361 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BLACKFORD CIRCUIT COURT
The Honorable Dean A. Young, Judge
Cause No. 05C01-1008-FA-332

**July 17, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Jason E. Hough ("Hough") was convicted of three counts of Child Molesting,[1] as Class A felonies, and sentenced to ninety years imprisonment. He now appeals, challenging both his convictions and his sentence.

We affirm his convictions, but we reverse and remand with instructions with respect to his sentence.

**Issues**

Hough raises several issues for our review, which we restate as:

   I.   Whether the trial court abused its discretion under:

      a.  Evidence Rule 404(b) when it admitted certain testimony concerning prior acts by Hough toward his victim;

      b.  Evidence Rules 401 and 702 when it permitted a nurse sexual assault examiner to testify regarding the results of her examination of Hough's victim;

      c.  Evidence Rule 803(4) when it admitted into evidence certain hearsay statements made by Hough's victim to the nurse sexual assault examiner;

  II.   Whether the trial court erred when it denied Hough's motion for a mistrial;

 III.   Whether there was sufficient evidence to support the convictions; and

 IV.   Whether Hough's aggregate ninety-year sentence is inappropriate.

**Facts and Procedural History**

In late November 2009, Hough, who worked as a tattoo artist and resided in Dunkirk,

---

[1] Ind. Code § 35-42-4-3(a).

was introduced to M.P.'s stepfather through mutual friends. M.P., who was then thirteen years old, and her family resided in Union City at the time. M.P.'s stepfather and Hough became very close friends and their families also became close. By the end of 2009, M.P. and her family began to spend their weekends with Hough's family in Dunkirk.

M.P.'s mother and stepfather decided to move to Dunkirk from Union City. The family, including M.P., moved to Dunkirk around January 21, 2010. The two families became even closer: M.P. and her siblings spent most days after school at Hough's home, the families spent most weekends together, and the Houghs shared their home with M.P.'s family when her family encountered problems with their utilities.

About a week after M.P. and her family moved to Dunkirk, they were at the Houghs' home very late on a weekend night. Hough had been giving M.P.'s mother and stepfather tattoos that night, and both families' children had fallen asleep, with M.P and two siblings sleeping in the Houghs' living room. Hough told M.P.'s mother and stepfather to go home without waking up the children, and said that he would watch them for the rest of the night.

At some point, Hough sat down on the couch next to M.P. and began watching television. When M.P. awoke, Hough said "good morning" and gestured for her to follow him to the tattoo room Hough had built in his garage; M.P. followed. Tr. at 28. Once they arrived in the tattoo room, Hough sat on a loveseat and began watching television, and invited M.P. to join him because the loveseat was more comfortable than the bench she had been sitting on. M.P. moved to the loveseat, and Hough retrieved a blanket to cover them from the cold in the garage.

3

A few seconds later, Hough began to kiss M.P. on her neck, then "crawled across" her, pulled down both of their pants, attempted to engage in sexual intercourse with M.P., and put his finger in M.P.'s vagina. Tr. at 33. After Hough stopped, the two went back into the house. M.P did not tell anyone about what occurred, however, and the families remained close.

One or two weeks after this incident, M.P. and two of her siblings were at Hough's home on a Friday afternoon after school along with Hough and his children. M.P. had gotten up to use the bathroom. After telling the other children to clean up his daughters' room, Hough followed M.P. into the bathroom. He took away the notebook and pencil M.P. had been carrying, began to kiss her and remove her pants, and then told her to lean against the bathroom sink. M.P. did so; Hough then penetrated M.P.'s anus with his penis, and penetrated her vagina with both his penis and a finger. M.P. told Hough that she was sore, but did not tell anyone else what had happened.

About two weeks later, M.P. and most of her siblings were again at Hough's home after school along with Hough and his children. Hough told M.P. to go to the garage and clean the tattoo room. M.P. "knew what his real intentions were" and said she did not want to go. Tr. at 45. Hough told M.P. that he "just caught you on your bluff," and M.P. eventually went to the tattoo room with Hough following her. Tr. at 45. Hough raised the garage door to be able to hear "if someone pulls up" outside the house. Tr. at 45. As he and M.P. entered the tattoo room, Hough started kissing M.P. and pulled down her pants. He then pushed her onto the loveseat and tried "extremely hard" to penetrate M.P.'s vagina with

4

his penis, which M.P. found to be "extremely painful." Tr. at 46. Hough then retrieved a container "of some type of jelly" and again penetrated M.P.'s vagina. Tr. at 46. Hough then stopped and told M.P. to sweep up the tattoo room.

At some point, an anonymous person contacted Blackford County Child Protective Services about possible sexual misconduct by Hough toward M.P. M.P. was twice interviewed by non-police investigators; each time, she denied any sexual conduct by Hough. On June 18, 2010, M.P. was taken from school to speak with Nancy Renz ("Renz"), a registered nurse and certified Sexual Assault Nurse Examiner who was director of the Madison County Sexual Assault Treatment Center. Renz performed a sexual assault examination upon M.P. At that time, M.P. told Renz about Hough's conduct.

On August 30, 2010, the State charged Hough with three counts of Child Molesting, as Class A felonies, and one count of Child Molesting, as a Class C felony.[2] A bench warrant was issued the same day, and Hough was arrested on August 31, 2010.

On January 27, 2011, the trial court issued its "Standard Orders In Limine." These stated in part, "No person shall make reference to other crimes, wrongs, or acts committed by any witness or person without first receiving leave of the Court" and complying with "all other applicable rules of evidence." App. at 46. The order then cited Evidence Rule 404(b).

A jury trial was conducted on February 8, 9, and 10, 2011, but the jury could not come

---

[2] I.C. § 35-42-4-3(b). The initial charging information included an additional charge for Child Molesting, as a Class C felony, as to a second victim, and Rape, as a Class B felony, as to a third victim. Hough moved for separate trials, and on January 27, 2011, the trial court granted this motion in part, ordering separate trials as to each victim. Hough raises no issue on appeal with respect to the trial court's order.

to a unanimous decision on the charges. The trial court therefore declared a mistrial in the case.

After conducting a pre-trial conference on April 4, 2011, the trial court set the matter for retrial on May 17, 2011. On May 4, 2011, the trial court renewed the pre-trial orders it had issued before the February 10 mistrial, including the Standard Orders In Limine.

A second jury trial was conducted on May 17 and 18, 2011. During the trial, M.P. testified about an instance of sexual contact Hough initiated with her before the date of the earliest of the offenses for which the State had entered charges. Hough timely objected to the admission of this testimony under Evidence Rule 404(b), and the trial court overruled the objection. In addition, Renz testified about statements M.P. made during her examination on June 28, 2010; among these was M.P.'s discussion of an incident with Hough that went uncharged. Hough moved for a mistrial, arguing that an admonishment to the jury would not be sufficient to remedy the harm posed by Renz's testimony. Because Renz's statement came near the end of the first day of trial, the trial court dismissed the jury for the rest of the day and indicated that it would consider the motion and rule the following morning. The next morning, the trial court denied the motion and admonished the jury to disregard Renz's statement.

At the conclusion of the trial, the jury found Hough guilty of all four counts of Child Molesting, three as Class A felonies, and one as a Class C felony.

A sentencing hearing was conducted on June 6, 2011, at the conclusion of which the trial court entered judgment of conviction against Hough on all four counts, found him to be

6

a sexually violent predator, and sentenced him to thirty years imprisonment for each Class A felony conviction and four years imprisonment for the single Class C felony conviction, with the sentences to run consecutively. This yielded an aggregate sentence of ninety-four years imprisonment, to commence after a seven-year sentence imposed for unrelated offenses committed in Jay County.

During the sentencing hearing, Hough requested that the trial court vacate his conviction for Child Molesting, as a Class C felony, on double jeopardy grounds; the trial court denied this request. On July 27, 2011, the trial court reviewed sua sponte the charging information and notified the parties that, pending briefing by the parties, it would determine whether to grant Hough's motion and vacate the Class C felony conviction.

On, August 26, 2011, the trial court determined that Hough's conviction of one count of Child Molesting, as a Class A felony, and his conviction of Child Molesting, as a Class C felony, arose from the same facts, and vacated Hough's conviction of Child Molesting, as a Class C felony, and its attendant sentence on double jeopardy grounds. Thus, the trial court entered an amended sentencing order leaving Hough with three convictions for Child Molesting, as Class A felonies, with three consecutive thirty-year terms of imprisonment, yielding an aggregate sentence of ninety years imprisonment, to commence after Hough's seven-year sentence for unrelated offenses committed in Jay County.

This appeal followed.

**Discussion and Decision**

Admissibility of Portions of M.P.'s Testimony under Evidence Rule 404(b)

7

Hough argues that a portion of M.P.'s testimony was inadmissible under Evidence Rule 404(b), and that the trial court abused its discretion when it overruled his objection to the admission of that testimony.

We review a trial court's rulings on the admissibility of evidence for an abuse of discretion. In re Paternity of H.R.M., 864 N.E.2d 442, 445 (Ind. Ct. App. 2007). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. Id. Even where the trial court has abused its discretion, however, we will not reverse unless the admission affected a party's substantial rights, which requires that we "assess the probable impact of the evidence upon the jury" and reverse only where the error is not harmless. McClain v. State, 675 N.E.2d 329, 331 (Ind. 1996); Ind. Trial Rule 61.

Relevant evidence is that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. Only relevant evidence is admissible at trial. Evid. R. 402. Though evidence of prior acts may be relevant, our Rules of Evidence place limits upon the admissibility of such evidence at trial:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Evid. R. 404(b).

Indiana courts follow a two-step process when evaluating the admissibility of evidence under Rule 404(b). Southern v. State, 878 N.E.2d 315, 321 (Ind. Ct. App. 2007), trans. denied. First, the court must determine whether the evidence offered of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the offenses charged. Id. Second, the court must determine whether the probative value of the evidence is substantially outweighed by its prejudicial effect on the defendant under Evidence Rule 403. Id. We use the same test upon appeal to determine whether the trial court abused its discretion. Id.

The paradigmatic example of evidence inadmissible under Rule 404(b) is evidence of "a crime committed on another day in another place, evidence whose only apparent purpose is to prove the defendant is a person who commits crimes." Id. at 321-22 (citing Swanson v. State, 666 N.E.2d 397, 398 (Ind. 1996)). The exceptions to Rule 404(b) "are to be applied cautiously," however, "[b]ecause evidence of other bad or uncharged acts can often be unduly prejudicial." Id. at 322 (citing Brown v. State, 577 N.E.2d 221, 226 (Ind. 1991)).

Here, Hough contends that the trial court erroneously admitted M.P.'s testimony concerning two incidents of uncharged conduct that occurred while Hough was helping her family move from Union City, a little more than one week before the first incident of charged conduct in this case. Concerning the first incident, which occurred while M.P., Hough, and her family were packing their belongings in the Union City home, M.P. testified that Hough brought her into a room in the family's basement and kissed her mouth for around ten

9

seconds, then told M.P. not to tell anyone about their encounter. Concerning the second incident, which occurred in M.P.'s stepfather's truck during the drive from Union City to Dunkirk, M.P. testified that Hough was sitting next to her in the truck, "scooted [a] picture over onto his lap and my lap, and it was a little bit on my brother's, and, uhm, then, he started holding my hand and rubbing on me and rubbing … [b]etween my legs, my legs, my stomach, my hands." No one else in the truck noticed this event occurring. (Tr. at 25-26.)

Hough objected to the admission into evidence of M.P.'s testimony concerning these two incidents. At trial, the State contended that "this is behavior that led up to the crimes charged," and the trial court permitted M.P.'s testimony. Tr. at 19. On appeal, the State responds to Hough's claim of error by arguing that M.P.'s testimony was probative as evidence of "an attempt to groom his victim for molestation," Appellee's Br. at 17, and cites this court's decisions in Piercefield v. State, 877 N.E.2d 1213 (Ind. Ct. App. 2007), trans. denied, and Southern v. State, supra, for support.

Our supreme court recognized that using Evidence Rule 404(b) instead of the previously-used "depraved sexual instinct" exception in child molestation cases would not preclude admission of prior sexual misconduct in all cases—only that it would preclude admission of such evidence to show action conforming to a particular character trait. Lannan v. State, 600 N.E.2d 1334, 1339 (Ind. 1992) (applying Fed. R. Evid. 404(b)).

Further, this Court has recognized that prior acts that would otherwise be inadmissible under Rule 404(b) may be introduced to show a pattern of conduct whereby a defendant "grooms" a victim for molestation by familiarizing children "with touching and creat[ing a]

10

more physical relationship with them," even when that touching was not overtly sexual in itself. Piercefield, 877 N.E.2d at 1216. We have also held as admissible evidence indicating the existence of "a preconceived plan that was a driving force in the progression of successive events" where the Defendant engaged in sexual acts with his victim outside the charging jurisdiction during a period of time between the charged acts, most of which occurred within a several-day period. Southern, 878 N.E.2d at 323.

Here, we are confronted with conduct that the State argued before the trial court was "inappropriate[], not criminal[], but inappropriate[]." Tr. at 19. Whether criminal or not,[3] M.P.'s testimony regarding Hough's conduct during the move from Union City pertains to the unquestionably sexual conduct of kissing M.P. and rubbing between her legs. Evidence of this conduct does not, however, amount to evidence whose only probative value is to show that Hough had a propensity to engage in the conduct charged. Rather, this case is not unlike Piercefield, where the 404(b)-related conduct consisted of back rubs that were not overtly sexual but were intended to make the child victims accustomed to touching the defendant. Piercefield, 877 N.E.2d at 1216.

We therefore cannot conclude that the trial court abused its discretion when it ruled as admissible M.P.'s testimony regarding Hough's prior uncharged acts during the move from Union City. Moreover, even if erroneous, such error was harmless in light of the existence of other evidence sufficient to sustain the conviction. See infra.

---

[3] As Hough notes in his briefs, these instances of conduct during the move from Union City are arguably criminal. See I.C. § 35-42-4-3(b) (setting forth the elements for Child Molesting, as a Class C felony, for touching or fondling a minor with intent to arouse or satisfy sexual desires in either the adult or victim).

11

<u>Renz's Testimony as an Expert Witness</u>

Hough also argues that the trial court should have excluded Renz's testimony in its entirety because her statements did not rely upon any scientific principle or evidence, but rather upon M.P.'s statements, and thus lacked probative value.

While Hough presents his argument by referring to Evidence Rule 702, which governs the testimony of expert witnesses, his argument bears largely upon the relevance of Renz's testimony under Rule 401. Hough takes issue with the entirety of Renz's testimony, arguing that it lacked probative value under Rule 401. In particular, Hough argues that because Renz was unable to determine whether M.P. had previously engaged in sexual intercourse of any kind after conducting a physical examination of M.P., Renz's testimony lacked any scientific basis and did not "assist the trier of fact to understand the evidence or to determine a fact in issue." Evid. R. 702(a).

Renz's testimony included summary restatements of several incidents concerning which M.P. had already testified at length, and Renz's discussion of the results of her physical examination of M.P. With respect to M.P.'s prior testimony, Renz testified based upon her notes about three incidents of contact between M.P. and Hough based upon M.P.'s statements during Renz's examination on June 18, 2010. Renz's testimony on these incidents did no more than repeat in summary form information that M.P. had already related at greater length. Renz also related a fourth incident about which M.P. had spoken but about which M.P. had not testified at trial. During this incident, Hough went into his daughters' room with M.P., kissed her and "rubbed" her stomach and side, and told M.P. not to tell anyone.

12

Tr. at 139.[4]

Renz went on to testify about the results of the examination she conducted on M.P. Renz testified that the external female genitalia heals very quickly after trauma (often within twenty-four hours) and that a physical examination would ordinarily not allow a medical professional to determine whether an individual had previously engaged in sexual activity. Renz testified that she did not find signs of trauma or an indication of any kind that M.P. had engaged in sexual activity, and that based on the speed of healing from trauma would not have expected to find such signs on June 18, 2010, nearly three months after the last incident for which Hough was charged in this case. Thus, we cannot conclude that Renz's testimony lacked any scientific basis that would require its exclusion under Rule 702.

Moreover, we cannot conclude that Evidence Rule 401 required exclusion of this evidence. Renz was unable to determine from her physical examination whether M.P. had engaged in sexual intercourse of any kind, let alone whether such activity occurred with Hough. Thus, Renz's testimony tended to make "less probable a fact of consequence to determination of the action"—her testimony that she could reach no conclusion as to whether M.P. had ever engaged in any kind of sexual activity lent support to a conclusion that Hough had not molested M.P. See Evid. R. 401.

Thus, we cannot conclude that the trial court abused its discretion under Evidence Rules 401 and 702 when it admitted Renz's testimony.

---

[4] This testimony drew Hough's motion for a mistrial, a matter to which we will turn below.

Admissibility of Hearsay under Evidence Rule 803(4)

Hough also argues that the trial court abused its discretion when it permitted Renz to present hearsay testimony concerning certain of M.P.'s statements during Renz's examination. Specifically, Hough argues that M.P. did not make these statements for the purposes of diagnosis or treatment under Evidence Rule 803(4), and thus the statements were inadmissible.

Hearsay evidence "is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(c). "Hearsay is not admissible except as provided by law" or the rules of evidence. Evid. R. 802. There are numerous exceptions to the hearsay rule; among these is an exception for the introduction of statements made by a declarant "seeking medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Evid. R. 803(4).

Hearsay is admissible under Rule 803(4) because "the declarant's self-interest in seeking medical treatment renders it unlikely the declarant will mislead the person that she wants to treat her." Nash v. State, 754 N.E.2d 1021, 1023 (Ind. Ct. App. 2001), trans. denied. This underlying rationale dictates a two-step analysis for evaluating whether a statement is properly admitted under the rule. First, the court must determine whether the declarant is motivated to provide truthful information to promote diagnosis or treatment. Id. at 1024. Second, the court must determine whether the content of the statement is such that

14

an expert in the field would reasonably rely on it to render a diagnosis or treatment. Id. Hearsay statements may be admissible under the rule even when they are given to non-physicians, so long as those statements "are made to advance a medical diagnosis or treatment." State v. Velasquez, 944 N.E.2d 34, 40 (Ind. Ct. App. 2011), trans. denied.

At common law and under our rules of evidence, a hearsay statement of "the identity of an attacker" has been held to be inadmissible "as proof of fault under the medical records hearsay exception." Dowell v. State, 865 N.E.2d 1059, 1066 (Ind. Ct. App. 2007) (citing Nash 754 N.E.2d at 1024), vacated on other grounds, 873 N.E.2d 59 (Ind. 2007) (summarily affirming this Court on all issues but sentencing). Where the statement "is for treatment rather than fault it may be admissible." Id. We have recognized that such testimony has special pertinence in child cases, where "'knowledge of the perpetrator is important to the treatment of psychological injuries that may relate to the identity of the perpetrator and to the removal of the child from the abuser's custody or control.'" Nash, 754 N.E.2d at 1024 (quoting 2 John W. Strong, McCormick on Evidence § 278 at n. 9 (4th ed. 1992)).

In this case, Hough argues that "there was no diagnosis or treatment because no injury was found," and thus Renz's testimony "was not a medical history but rather a sexual history." (Appellant's Br. at 10.) Thus, he insists, the trial court erred when it admitted Renz's testimony concerning M.P.'s statements identifying Hough as having engaged in sexual conduct with her.

We cannot agree. Upon Hough's objection to the introduction of Renz's testimony, the State argued that Renz "will be able to state that she did examine [M.P.] and that their

15

[sic] findings were consistent with someone who has been in the position that [M.P.] is in….

She examined [M.P.] and tried to attempt to obtain that information." (Tr. at 130-31.) In denying Hough's objection, the trial court noted that "other experts can testify about [what] the child testified at this point in time based upon that examination and lack of trauma can be consistent with molesting, just like trauma can be. There's no reason why there has to be trauma to support a molest." (Tr. at 131.)

Renz subsequently testified, "with every patient who is seen at the Sexual Assault Treatment Center, we do … a medical history. We need to know what happened…. [I]t also includes a head to toe examination … both of those are for the purpose of diagnosis and treatment." (Tr. at 136.) After providing hearsay testimony based upon M.P.'s statements to her, Renz went on to provide the results of her examination of M.P., stating that the results of the examination were consistent with her experience that many women show no signs of trauma from sexual intercourse or even childbirth because of how quickly the tissues of female genitalia heal. Given M.P.'s age and the length of time that had passed from Hough's encounters with M.P. and Renz's examination—a lapse of around three months—Renz testified that she would not expect to see any signs of trauma.

It was in this context, then, that Renz provided testimony concerning M.P.'s statements to her about her encounters with Hough. Given this, we cannot conclude that Renz's hearsay testimony, which largely summarized M.P.'s longer, more in-depth testimony, was inadmissible under Rule 803(4).

Motion for Mistrial

16

During Renz's testimony, Hough objected to certain hearsay testimony in which Renz repeated, largely in summary manner, statements she said M.P. had made to her regarding sexual conduct by Hough. One of these statements related to an incident between Hough and M.P. that M.P. had not mentioned during her testimony. Hough objected and moved for a mistrial, which the trial court ultimately denied, instead admonishing the jury to disregard Renz's statement. He now argues that this was error.

Whether to grant or deny a party's motion for a mistrial lies within the discretion of the trial court. Pierce v. State, 761 N.E.2d 821, 825 (Ind. 2002). We afford great deference to the trial court's ruling on a motion for mistrial. Brooks v. State, 934 N.E.2d 1234, 1243 (Ind. Ct. App. 2010), trans. denied. "A mistrial is an extreme remedy" that a trial court should grant only when no other method can rectify the situation. Pierce, 761 N.E.2d at 825. Where the trial court timely and accurately admonishes the jury in the face of erroneously admitted evidence, that admonishment is presumed to cure any error. Banks v. State, 761 N.E.2d 403, 405 (Ind. 2002).

When reviewing a motion for mistrial, "we consider whether the defendant was placed in a position of grave peril to which he should not have been subjected." Leach v. State, 699 N.E.2d 641, 644 (Ind. 1998). "The gravity of the peril is determined by 'the probable persuasive effect on the jury's decision.'" Brooks, 934 N.E.2d at 1243 (quoting Leach, 699 N.E.2d at 644). To succeed on appeal from the denial of a motion for mistrial, the defendant must demonstrate 1) that the conduct complained of was error, and 2) that the conduct had a probable persuasive effect upon the jury's decision. Id.

17

During her testimony, Renz related summaries from her notes of the sexual contact that M.P. had talked about during Renz's examination. Much of this testimony merely repeated portions of M.P.'s testimony. Between Renz's testimony regarding the second and third of these incidents, however, the following exchange occurred:

> Q. And was there another incident after that that she reported to you?
>
> A. Yes.
>
> Q. And what was that incident?
>
> A. I'm sorry. Uhm, she was, again, at [Hough's] house. Uhm, she referred to being in the little girls' room and, uhm, he came into the room and kissed her. She said, "he rubbed my stomach and my side" and [Hough] asked her not ever to tell.

Tr. at 138-39.

Hough immediately objected to Renz's answer and requested that the trial court declare a mistrial. Hough observed that Renz's testimony fell outside both the Motion in Limine and the charged offenses, and that at least one juror-submitted question asked about whether any incidents occurred involving Hough and M.P. outside of those charged by the State or discussed by M.P. After hearing argument concerning whether to grant Hough's motion for a mistrial, the court recessed for the day and took Hough's motion for a mistrial under advisement.

The following day, before recommencing Renz's testimony, the trial court denied Hough's motion, acknowledged that Renz's statements violated the court's rulings in limine, and admonished the jury:

18

The Court, at this time, is directing that you disregard the testimony regarding the little girls' room that was referenced by Witness Renz and all testimony that came thereafter. You are not to consider that testimony and that testimony is stricken from the record.

Tr. at 162-63. Hough did not stipulate to the admonishment.

That an error occurred—Renz's violation of the orders in limine—is clear. However, the trial court admonished the jury to disregard Renz's testimony concerning the incident between M.P. and Hough to which M.P. had not previously testified, and we cannot conclude that the testimony was so damaging that the trial court's admonishment was insufficient to cure that error. Moreover, we find no other error that may have resulted in prejudice to Hough. Nor do we think that the persuasive effect upon the jury of the conduct concerning which Renz testified was particularly great in light of M.P.'s direct, detailed testimony concerning her encounters with Hough. Thus, we cannot conclude that Hough faced the type of "grave peril" that would require a mistrial, and accordingly find no error in the trial court's denial of Hough's motion.

## Sufficiency of the Evidence

We turn now to Hough's claim that there was insufficient evidence to sustain his convictions for Child Molesting. When reviewing the sufficiency of the evidence on appeal, we consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. Id. We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting

19

Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." Id. (quoting Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

In this case, Hough was charged with three counts of Child Molesting, as Class A felonies, and one count of Child Molesting, as a Class C felony. To convict Hough of each count of Child Molesting, as Class A felonies, the State was required to prove that Hough, as a person at least twenty-one years of age, performed or submitted to sexual intercourse or deviate sexual conduct with M.P., a child under fourteen years of age, on three occasions— on or around January 21, February 6, and March 22, 2010. I.C. § 35-42-4-3(a); App. at 15-17. To convict Hough of Child Molesting, as a Class C felony, the State was required to prove that on or around March 22, 2010, Hough performed or submitted to fondling or touching with M.P., a child under fourteen years of age, with intent to arouse either his own sexual desires or those of M.P. I.C. § 35-42-4-3(b); App. at 18.

Although M.P. testified that each of the charged offenses occurred, Hough argues in his brief that M.P.'s testimony was incredibly dubious, and thus there was insufficient evidence to support Hough's conviction. Our supreme court has set forth the standard of review under the incredible dubiosity rule:

> Within the narrow limits of the "incredible dubiosity" rule, a court may impinge upon a jury's function to judge the credibility of a witness. White v. State, 706 N.E.2d 1078, 1079 (Ind. 1999). If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. Id. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Id. Application of this rule is rare and the standard to be applied is whether the

testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. Stephenson v. State, 742 N.E.2d 463, 498 (Ind. 2001) (quoting Bradford v. State, 675 N.E.2d 296, 300 (Ind. 1996)).

Love v. State, 761 N.E.2d 806, 810 (Ind. 2002). Where the testimony of a single witness is not incredibly dubious, however, that testimony is sufficient to sustain a conviction for Child Molesting. Cf. id. (concluding that the incredible dubiosity rule did not apply and affirming Love's conviction for child molesting).

Much of Hough's argument on the question of incredible dubiosity is directed toward a claimed inherent improbability of M.P.'s testimony concerning Hough's conduct during the move from Union City. Hough also compares M.P.'s testimony to prior statements she made out of court and asks that we reweigh M.P.'s testimony against his testimony. Yet the incredible dubiosity rule has application only when the fact-finder is presented with equivocal in-court testimony. Corbett v. State, 764 N.E.2d 622, 626 (Ind. 2002). None of this falls within the incredible dubiosity rule, and we therefore cannot agree with Hough that M.P.'s testimony on the charged offenses was so contradictory or inherently improbable as to conclude that the rule applies. To the extent Hough argues that M.P.'s testimony itself relayed improbable events, much of that argument invites us to reweigh the evidence, which we cannot do. Cf. Drane, 867 N.E.2d at 146.

We therefore conclude that there was sufficient evidence to sustain Hough's convictions for Child Molesting.

## Sentencing

Finally, we turn to Hough's challenge to his sentence on appeal. Hough argues that

21

the trial court abused its discretion when it found as an aggravating circumstance Hough's "repeated victimization of a child under 14 years of age over a period of several months" (Appellant's Br. at 27), and that his aggregate ninety-year sentence was inappropriate.

With regard to our review of aggravating and mitigating circumstances, "[s]o long as the sentence is within the statutory range, it is subject to review only for abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 490-91 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs when the trial court's decision is contrary to the logic and effect of the facts and circumstances before it. Id. at 490. When imposing a sentence for a felony, the trial court must enter "a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence." Id. at 491. Thus, "[t]he reasons given" for a sentence "are reviewable on appeal for abuse of discretion," id., but "[e]ven if a trial court improperly applies an aggravator, a sentence enhancement may be upheld when there is another valid aggravating circumstance." Edrington v. State, 909 N.E.2d 1093, 1097 (Ind. Ct. App. 2009), trans. denied.

Further, under Appellate Rule 7(B), this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." It is the defendant's burden to persuade this court that his sentence "has met th[e] inappropriateness standard of review." Anglemyer, 868 N.E.2d at 494 (quoting Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006)).

In Reid v. State, the Indiana Supreme Court reiterated the standard by which our state

appellate courts independently review criminal sentences:

> Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence through Indiana Appellate Rule 7(B), which provides that a court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The burden is on the defendant to persuade us that his sentence is inappropriate.

876 N.E.2d 1114, 1116 (Ind. 2007) (internal quotation and citations omitted).

The Court more recently stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor a sentence appropriate to the circumstances presented. See id. at 1224. One purpose of appellate review is to attempt to "leaven the outliers." Id. at 1225. "Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Id. at 1224.

Here, Hough was convicted of three counts of Class A felony Child Molesting.[5] Each count carried a sentencing range of twenty to fifty years imprisonment, with an advisory sentence of thirty years. I.C. § 35-50-2-4. The trial court sentenced Hough to thirty years imprisonment for each offense, running each consecutively to one another and to Hough's

---

[5] Though judgment of conviction was entered against Hough for a fourth offense, Child Molesting, as a Class C felony, upon Hough's motion to correct error the trial court vacated this conviction as violating double jeopardy principles, but left in place Hough's other convictions and their associated sentences.

seven-year sentence for a prior offense committed in Jay County.

Applying Appellate Rule 7(B), we turn first to the nature of Hough's offenses. On three separate occasions over the course of three months, Hough molested M.P., attempting to engage in vaginal and anal intercourse with her while he was responsible for the care of M.P., her siblings, and his own children. In each of these incidents, Hough took steps to avoid detection. These included taking M.P. into the tattoo room of his garage, ordering his children and M.P.'s siblings to remain away from him when he cornered M.P. in a bathroom, and opening the garage door to be able to hear any cars that might come up the driveway. Hough also told M.P. not to tell others about his actions.

Each of these instances of molestation were physically painful to M.P., but led to no permanent physical injury. Hough's actions with M.P. have caused her significant emotional, social, and academic challenges, however, and have led to difficulty making and keeping friends and declining performance in school. M.P. has been prescribed anti-anxiety medications and is prone to bouts of anger and sadness that upset her siblings. M.P.'s stepfather, whom M.P. views as a father, testified at the sentencing hearing that he viewed Hough's actions as a personal betrayal of trust, and has as a result become untrusting and fearful of others.

With respect to his character, Hough has two prior juvenile delinquency adjudications for arson and battery with a deadly weapon. As an adult, he has been convicted twice each of theft and burglary, as well as escape and driving while suspended; all of these offenses except for driving while suspended were felonies.

24

Hough has been diagnosed with attention deficit disorder, but has not taken medication prescribed for its treatment. He also has a history of substance abuse. Hough denied continued alcohol use but began drinking at the age of seven or eight and has previously used marijuana and methamphetamine. Since age twenty-seven, Hough has used Vicodin on a daily basis, taking as many as four or five pills at a time, and has never had a prescription for the drug. He has used Morphine twice weekly since age thirty, and has previously used Clonopin or Oxycontin on a few occasions. Hough has never received treatment for his substance abuse.

Simply put, while Hough's character does not speak well of him, the incidents that gave rise to his convictions are not of a nature beyond what we think the Legislature contemplated as demanding more than an advisory sentence. Nor were Hough's acts so separated in time, place, and circumstance as to make the imposition of consecutive sentences appropriate. Because of Hough's extensive prior criminal history, we agree with the trial court that an aggravated sentence is appropriate, though we think the ninety-year sentence imposed is an outlier. We therefore exercise our independent authority under the Indiana Constitution and Appellate Rule 7(B), and thereby order the trial court to revise Hough's sentence to forty years imprisonment for each offense with these sentences run concurrently, yielding an aggregate term of imprisonment of forty years.

## Conclusion

The trial court did not abuse its discretion when it admitted evidence over Hough's objections. The trial court did not err when it denied Hough's motion for mistrial. There was

25

sufficient evidence to sustain Hough's convictions. Because we conclude that his aggregate ninety-year sentence is inappropriate, we order that his sentence be revised to an aggregate forty-year term.

Affirmed in part, reversed in part, and remanded with instructions.

CRONE, J., and BROWN, J., concur.